FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 20, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CYNTHIA MANYCOLORS, as Administrator of The Estate of Bjorn Manycolors, and its statutory beneficiaries,

Plaintiff,

v.

SPOKANE COUNTY SHERIFF'S OFFICE, SPOKANE COUNTY, CITY OF SPOKANE VALLEY, CITY OF SPOKANE VALLEY POLICE DEPARTMENT, CITY OF SPOKANE, SPOKANE POLICE DEPARTMENT, WASHINGTON STATE PATROL, BRENT MILLER, Deputy, in his official and personal capacity, MATTHEW PETERSON, Deputy, in his official and personal capacity, JOHN NOWELS, Sheriff, in his official and personal capacity, JESSICA JIMERSON, in her official and personal capacity, and

No. 2:25-CV-00354-SAB

**ORDER RE: MOTIONS TO DISMISS**

**ORDER RE: MOTIONS TO DISMISS** * 1

AMERICAN MEDICAL RESPONSE
AMBULANCE SERVICE, INC., a
foreign Corporation,

　　　　Defendants.

Before the Court are Defendant City of Spokane's Motion to Dismiss, ECF No. 15, and Defendant Washington State Patrol's Motion to Dismiss, ECF No. 17. Plaintiff is represented by Caitlin R. Skurky, Elizabeth Nicoletta, and Joshua P. Maurer. Defendants are represented by Heather C. Yakely, Lynden P. Smithson, Brandon E. Slaven, Brian P. Waters, Matthew C. Halldorson, and Jennifer G. Crisera. The motions were considered without oral argument.

### **Factual Allegations**

The following facts are taken from Plaintiff's First Amended Complaint:

On June 4, 2023, at 12:10 a.m., Bjorn Manycolors was walking down N. Dyer Road in Spokane Valley, Washington. At the same time, Spokane County Sheriff's Deputies Brent Miller and Matthew Peterson were driving southbound on N. Dyer Road. Deputies Miller and Peterson spotted Mr. Manycolors and stopped their vehicle in front of him. The Deputies exited the car and approached Mr. Manycolors, who looked confused and surprised by the sudden stop.

Within two minutes of making contact with Mr. Manycolors, Deputy Miller grabbed him without warning or explanation. Deputy Peterson soon joined in physically restraining Mr. Manycolors. Neither Deputy informed Mr. Manycolors that he was being detained, that he was under arrest, nor explained what Mr. Manycolors had done to warrant a physical arrest or detention.

Upon being physically restrained, Mr. Manycolors told the Deputies "Hey, get off me." The Deputies continued to physically restrain him. Mr. Manycolors continued to make verbal requests to be released, and after his fourth request, he

**ORDER RE: MOTIONS TO DISMISS** * 2

pulled a firearm from his pants and released a warning shot into the air. Upon hearing the gun shot, the Deputies released Mr. Manycolors, who then ran in the opposite direction. As he ran away, the Deputies shot at Mr. Manycolors several times, hitting him with multiple bullets. Mr. Manycolors fell to the ground.

Deputy Peterson then notified that shots had been fired over his radio, and the Deputies approached Mr. Manycolors. After nearby residents began questioning the Deputies as to what happened, the Deputies attempted to determine whether Mr. Manycolors was responsive. When Mr. Manycolors did not respond, Deputy Miller called for medics to be staged.

Between 12:16 and 12:17 a.m., additional officers arrived at the scene. One officer dragged Mr. Manycolors' body across the gravel by one arm to a different spot where officers began placing bandages atop his bullet wounds. At no point did any officer check Mr. Manycolors' vitals or call for additional medical assistance. Around 12:20 a.m. an officer began chest compressions.

Medics arrived on the scene at 12:23 a.m. and American Medical Response Ambulance Service, Inc. (AMR) paramedic Jessica Jimerson indicated his wounds were such that Mr. Manycolors was probably not savable. Ms. Jimerson did not take Mr. Manycolors' vitals or examine his wounds. An officer asked Ms. Jimerson if a doctor should be called, to which she agreed, but indicated the doctor would likely make the same call. Before calling a doctor, Ms. Jimerson noted that Mr. Manycolors' arm was behind his back and should be moved so that chest compressions would be done more effectively. When officers informed her that Mr. Manycolors was handcuffed, Ms. Jimerson laughed and made no effort to assist or request that the handcuffs be removed. Ms. Jimerson then stepped away to call a doctor and spoke on the phone for approximately one minute before directing the officers to "call it." Mr. Manycolors was pronounced dead at 12:25 a.m. Ms. Jimerson began to ask follow-up questions about what had transpired, and at one point stated "good shot" when looking at Mr. Manycolors' body.

**ORDER RE: MOTIONS TO DISMISS** * 3

Later, an unknown officer accompanied Deputy Miller away from the scene and asked whether his body camera was on. When Deputy Miller confirmed it was on, the pair stopped speaking and walked to Deputy Miller's vehicle. The unknown officer asked a nearby officer if Deputy Miller was okay to turn off his body camera, and the two did not speak until the body camera was turned off.

At approximately 3:18 a.m., Leuitenant Jerad Kiehn with the Spokane County Sheriff's Office called the Office of Independent Investigation (OII). Plaintiff asserts Lieutenant Kiehn relayed false and incomplete information to OII to avoid OII involvement and keep the primary investigation in the hands of the Spokane Independent Investigation Response (SIIR) Team. The SIIR protocol was established through Wash. Rev. Code § 10.114.010 to provide an independent means for investigation of incidents of deadly force used by a law enforcement agency in the Spokane area. The SIIR protocol was initiated, and Detective Ben Green of the Spokane Police Department and Troy Corkins of the Washington State Patrol conducted an investigation of the incident.

Plaintiff asserts Patrol Officer Corkins requested and obtained a search warrant to investigate Mr. Manycolors rather than Deputies Miller and Peterson or the shooting itself. Plaintiff asserts this led to a biased and incomplete collection of evidence resulting in a substandard investigation. Deputies Miller and Peterson refused to discuss the events leading up to the shooting and refused to provide a statement after the fact. Plaintiff asserts Detective Green conducted his SIIR investigation based on his own opinions of what transpired before the shooting.

Following the investigation by Detective Green and Patrol Officer Corkins, the Spokane County Prosecutor's Office deemed the shooting lawful. Plaintiff requested all documents related to the investigation via a Public Records Act (PRA) request. It was revealed that the investigation consisted solely of a review of fourteen officer reports, none of which were written by officers present at the time

**ORDER RE: MOTIONS TO DISMISS** * 4

of the shooting. No bodycam footage, videos, or photographs were provided in response to the PRA request.

Plaintiff submitted additional PRA requests throughout 2024 and 2025. In August 2024, Deputies Miller and Peterson issued compelled statements regarding the shooting of Mr. Manycolors, and the statements directly contradicted Detective Green's analysis and opinions. These statements were not provided to Plaintiff until late May 2025. Plaintiff asserts there are numerous documents subject to her PRA requests that have yet to be provided.

This lawsuit was initiated by Mr. Manycolors' mother, Cynthia Manycolors, in Spokane Superior Court on August 4, 2025, and it was removed to this Court on September 11, 2025. Defendants City of Spokane and Washington State Patrol now move the Court to dismiss the Complaint as to the claims asserted against them.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the pleading contains sufficient factual allegations that enable the court to reasonably infer that the defendant could be liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). When evaluating a Rule 12(b)(6) motion, the court must draw all reasonable inferences in favor of the non-moving party. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept conclusory allegations as true or to accept any unreasonable inferences in a complaint. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1054 (9th Cir. 2008).

**ORDER RE: MOTIONS TO DISMISS** * 5

**City of Spokane's Motion to Dismiss**

Defendant City of Spokane (the City) is a municipal entity in the State of Washington and is the employer of Detective Ben Green. In the operative Complaint, Plaintiff asserts the following claims against the City: (1) Municipal Liability under 42 U.S.C. § 1983; (2) Conspiracy to Commit a § 1983 Violation; (3) Respondeat Superior/Vicarious Liability; and (4) Wrongful Death.

The City argues Plaintiff's claims under § 1983 fail as a municipality is only subject to suit under § 1983 if it is alleged to have caused a constitutional violation through a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," and Plaintiff cannot allege any official policy or custom of the City contributed to a violation of any constitutional right of Mr. Manycolors. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978).

Regarding Plaintiff's third claim, The City asserts it is not vicariously liable for the actions of Detective Green as he acted within the scope of his employment and is entitled to qualified immunity. Lastly, the City argues Plaintiff's third and fourth claims fail as they are based on a tort claim of "negligent investigation," which is not a viable cause of action under Washington State law.

Plaintiff bases her constitutional claims on the City's involvement in the SIIR protocol. She asserts the City is involved in a multi-agency conspiracy to cover up constitutional violations through its participation in the SIIR program. Through participating in this program, agencies allegedly enter into and engage in a quid-pro-quo agreement to conduct insufficient investigations to protect officers who violate the constitutional rights of citizens.

To make a claim under § 1983, a plaintiff must show that their constitutional rights were violated, and the violation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Municipalities are liable under § 1983 for constitutional violations that occur as a result of a pervasive policy, practice, or custom. *Horton by Horton v. City of Santa Monica*, 915 F.3d

**ORDER RE: MOTIONS TO DISMISS** * 6

592, 602-03 (9th Cir. 2019). A municipality may be liable for acts pursuant to a custom even if it is not officially adopted or approved, so long as that custom has become a traditional method of carrying out policy. *Monell*, 436 U.S. at 659; *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). The policy must be the moving force behind the constitutional violation. *Bd. Of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

To establish a Conspiracy to Commit a § 1983 Violation claim, a plaintiff must allege (1) the existence of an express or implied agreement among the defendants to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010).

Plaintiff argues Mr. Manycolors' Fourth and Fourteenth Amendment rights were deprived when he was stopped by Deputies Miller and Peterson without probable cause or reasonable suspicion of criminal activity. Plaintiff then alleges the Deputies felt entitled to stop and seize Mr. Manycolors as they knew they would be protected through the SIIR protocol, which the City, through its alleged practice of conducting substandard investigations to protect offending officers, was involved with. Plaintiff has alleged sufficient facts for her § 1983 claims to survive at this stage. A motion to dismiss should be based on the pleadings, and the Court notes the City submitted additional factual material which is an invitation to treat this motion as a motion for summary judgment. The Court declines that implied invitation. Given the facts as alleged, this case should not be resolved on the pleadings, but rather after all parties have had an opportunity to engage in discovery.

Plaintiff's third and fourth claims against the City are based on the allegedly negligent investigation conducted by Detective Ben Green following the death of Mr. Manycolors. She asserts the City is vicariously liable for Detective Green's investigation pursuant to Wash. Rev. Code § 10.114.010, as Detective Green was

**ORDER RE: MOTIONS TO DISMISS** * 7

an employee of the City and his investigation was substandard and negligent. Plaintiff further asserts this larger pattern of negligent investigation and lack of accountability for offending officers contributed to the death of Mr. Manycolors, and she can accordingly recover against the City for wrongful death.

An employer is vicariously liable to third parties for its employees' torts committed within the scope of employment. *Robel v. Roundup Corp.*, 148 Wash.2d 35, 53 (2002). An employee is within the scope of employment if they are (1) engaged in the performance of duties required by his employment contract or specifically directed by the employer, or (2) engaged in the furtherance of the employer's interests. *Id*.

Under Washington Law, when the tortious conduct of one person results in the death of another, the decedent's representative can sue for damages. *Triplett v. Wash. State Dep't of Soc. & Health Servs.*, 166 Wash.App. 423, 428 (2012).

The underlying tort supporting this claim is the allegedly negligent investigation conducted by Detective Green. On the face of the pleadings, there is no clear tort of negligent investigation that Plaintiff can allege under the State provisions referenced and facts alleged. Indeed, generally, there is no cause of action for negligent law enforcement investigations except in narrow circumstances. *Janaszack v.* State, 173 Wash. App. 703, 725 (2013); *Babcock v. State*, 116 Wash.2d 596, 606-07 (1991) (recognizing a limited cause of action of negligent investigation in child abuse and neglect investigations). As such, the City's Motion to Dismiss as to Plaintiff's Vicarious Liability/Respondeat Superior claim against the City is **granted**. However, the Court grants Plaintiff leave to amend her complaint to plead additional facts and/or make alternative tort claims within sixty (60) days of the entry of this Order.

Although Plaintiff's Wrongful Death claim against the City cannot be based on a tort of negligent investigation, the City is potentially liable under § 1983 for constitutional torts. As Plaintiff has sufficiently alleged enough facts for her § 1983

**ORDER RE: MOTIONS TO DISMISS** * 8

claims to survive at this stage, Plaintiff can maintain a Wrongful Death claim against the City regarding its alleged constitutional violations. Accordingly, the City's Motion to Dismiss as to Plaintiff's Wrongful Death claim is **denied**.

<u>**Washington State Patrol's Motion to Dismiss**</u>

Defendant Washington State Patrol (WSP) is an agency of the State of Washington. It asserts it did not consent to the initial removal of this action, as its first appearance in the above-captioned matter occurred after removal to federal court. WSP now moves the Court to dismiss it from this action based on its Eleventh Amendment Immunity from suit in federal court.

The Eleventh Amendment entitles states to immunity from suit by individuals without the state's consent. *Arizona Students' Ass'n v. Arizona Bd. Of Regents*, 824 F.3d 858, 864 (9th Cir. 2016). There are three exceptions to this immunity: (1) Congress has abrogated immunity within a federal statute; (2) the State has waived immunity and allowed individuals to sue it pursuant to specific state statutes; and (3) in claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law. *Id*. at 865.

Here, Plaintiff offers no legal or factual basis upon which the Court can find that the State of Washington has waived immunity to suit. Accordingly, Defendant WSP is entitled to immunity and is dismissed from this case.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendant City of Spokane's Motion to Dismiss, ECF No. 15, is **GRANTED in part and DENIED in part**.

2.    Plaintiff's Respondeat Superior/Vicarious Liability claim against the City of Spokane is **DISMISSED**. Plaintiff is granted leave to amend her complaint within sixty (60) days of the entry of this Order to plead additional facts and/or underlying tort claims.

3.    Defendant Washington State Patrol's Motion to Dismiss, ECF No. 17, is **GRANTED**.

**ORDER RE: MOTIONS TO DISMISS** * 9

4.     The claims asserted against Defendant Washington State Patrol are **DISMISSED without prejudice**. The District Court Clerk is directed to **terminate** Washington State Patrol as a Defendant in the above-captioned matter.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 20th day of April 2026.

Stan Bastian
Chief United States District Judge

**ORDER RE: MOTIONS TO DISMISS** * 10